CHARLES WEBER, PLAINTIFF-RESPONDENT, v. ELENORE G. WEBER, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted March 24, 1986—Decided April 17, 1986.

Before Judges FURMAN and SKILLMAN.

*Lasky & Cohen,* attorneys for appellant (*Martin J. Cohen,* on the brief).

*Sirota & Sirota,* attorneys for respondent (*Beverly S. Sirota,* on the brief).

PER CURIAM.

Defendant appeals from an order modifying the alimony payable by her former husband. Because we conclude that the trial court premised the determination of alimony upon findings of fact for which there is a lack of adequate support in the record, we reverse.

After 26 years of marriage, the parties were divorced in 1980. As of that time, one child of the marriage, Seth, remained unemancipated. The settlement agreement between the parties gave custody of Seth to defendant. With respect to alimony and child support, the agreement provided:

[T]he husband shall pay to the wife the sum of $1,000 a month unallocated support.... It is further agreed and understood between the parties that this amount shall be renegotiated upon ... Seth graduating from high school and going off to college....

The agreement also provided that the parties would share the costs of Seth's college education equally.

Seth began college full time in January 1985. When the parties were unable to reach agreement in renegotiating alimony, defendant applied to the trial court to fix the amount.

The hearing on the motion focused primarily on defendant's needs and her ability to meet those needs. Defendant testified

that she was married at age 21. She worked for a year and a half after marriage until she became pregnant, and then devoted the next 20 years of her life to raising a family and running a home. She resumed employment part time in 1975.

At the time of the hearing, defendant had two part time jobs. She was employed 20 hours a week at $8 per hour by the Millburn Board of Education teaching remedial reading. She was also employed an average of 10 hours a week at $7.25 per hour by Berlitz School of Language. Defendant testified that her gross income from these employments was $8,273.23 in 1984. She received another $1,200 from a family business and $1,490 in dividends and interest. Defendant also testified that her total monthly living expenses were $1,886.

The trial judge accepted defendant's statement of her present living expenses. However, he assumed that the marital home would be sold within a short time. He concluded that upon the sale of the home defendant's monthly expenses would increase to $2,066. He further concluded that her total income from all sources, including interest income on her share of the proceeds from the sale of marital home, would be between $20,000 and $23,000. Accordingly, an alimony award of $500 a month was ordered to cover the deficit between defendant's living expenses and her own income. The trial judge's order also provided for the termination of this award on March 31, 1988.

We agree with plaintiff that since the parties' settlement agreement specifically contemplated that alimony would be redetermined when Seth went to college, the trial court's obligation was to determine the amount of alimony which would be fair, just and reasonable in light of all the circumstances as of the date of the hearing. *N.J.S.A.* 2A:34-23; *see Martindell v. Martindell,* 21 *N.J.* 341, 355 (1956). We also read the trial judge's opinion to have essentially adopted this approach, since he made specific findings as to defendant's living expenses and income and fixed alimony based upon those findings without

mentioning the alimony which plaintiff had agreed to pay until Seth began college.

■ Nevertheless, we are constrained to reverse the trial judge's decision because certain factual findings on which it was based are not supported by the record. The trial judge found that defendant's gross earned income for 1985 would be $15,000 less some loss of earnings as a result of the school summer vacation. The only evidence before the trial court on this issue was defendant's testimony and several of her pay stubs. Defendant testified that her gross income for 1984 was $8,273.23. Furthermore, there was nothing in her testimony from which it could be inferred that her income would increase substantially in 1985. However, the trial judge concluded from his own review of defendant's pay stubs that her actual income for 1985 would be approximately $15,000, which was more than $5,000 in excess of what she had testified. Specifically, the trial judge pointed to the pay stub from the Millburn Board of Education, which showed gross income through April 30, 1985 of $2,354.50. Because the hearing was held on April 22, 1985, he inferred that there had to be an error on the pay stub and that it actually reflected three rather than four months gross pay. There is no basis in the record for this conclusion. The gross pay of $2,354.50 shown on the stub for the year to date is approximately four times the monthly gross pay of $640. The pay stub is also completely consistent with defendant's testimony that she worked 20 hours a week at $8 per hour. Therefore, absent contrary testimony, the trial judge should have assumed that the pay stub reflected gross income for a four month period, as it purported on its face to show. This error by the trial judge resulted in an overstatement of nearly $3,500 in defendant's income of $15,000. Therefore, the case must be remanded for a redetermination of alimony in light of defendant's actual earned income.

■ We make several further observations in connection with the remand. The trial judge assumed that the marital home

would be sold and that defendant would move into an apartment. Both defendant's living expenses and her anticipated income were calculated on this assumption. This was a sound approach based on the record before the trial court which included a contract of sale signed by all the parties except defendant. However, we are advised that during the pendency of this appeal defendant has acquired plaintiff's interest in the marital home and continues to reside there. Therefore, the trial judge should take this circumstance into account in redetermining alimony on remand. The fact that the $37,000 custodial account held by defendant has been set aside for her one half share of Seth's college education also should be taken into account.

■ In addition, we conclude that the new order to be entered on remand should not include a provision terminating alimony in three years unless additional evidence is presented to justify that limitation upon the award. *An award of alimony should be limited in duration only if it is rehabilitative in nature or if there are other circumstances indicating that alimony should terminate at a fixed time in the future.* See *Lepis v. Lepis*, 83 *N.J.* 139, 155, n. 9 (1980); *Arnold v. Arnold*, 167 *N.J. Super.* 478 (App.Div.1979); *Turner v. Turner*, 158 *N.J. Super.* 313 (Ch. Div. 1978). The trial judge expressed the view that defendant should make efforts to obtain more lucrative employment, but his assessment of her prospects was not optimistic:

> I don't know that she has great potential for full time anyway at her age having been out of the employment market.

Without a more positive indication that defendant's earnings will significantly increase by 1988, or that there are other circumstances warranting termination, the trial judge should not impose a fixed termination date on the award of alimony.

Accordingly, the order of the trial court modifying the alimony payable to defendant is reversed and the matter is remanded for further proceedings in accordance with this opinion.