762 A.2d 1040 (2000)
335 N.J. Super. 465
Margaret M. COX, Plaintiff-Appellant,
v.
Harry E. COX, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted September 27, 2000.
Decided December 12, 2000.
*1042 Rabkin Law Offices, attorneys for appellant (Maryann J. Rabkin, on the brief).
Zane & Lozuke, Woodbury, attorneys for respondent (Arlene A. Gerber, on the brief).
Before Judges BAIME, CARCHMAN and LINTNER.
*1041 The opinion of the Court was delivered by CARCHMAN, J.A.D.
This appeal requires us to examine the scope and application of the recent amendment to N.J.S.A. 2A:34-23 providing for limited duration alimony. We conclude that the award of limited duration alimony to a spouse following a twenty-two year marriage was inappropriate and inconsistent with the statutory criteria for such an award and that permanent alimony should have been awarded. Accordingly, we reverse and remand for further consideration of plaintiff's application for that relief.
*1043 We address this narrow issue in the context of the following facts adduced during the trial. Plaintiff Margaret M. Cox and defendant Harry E. Cox were married in 1977. Their child, Heather, currently a college student, was born in 1979. In 1996, the parties separated, and a dissolution complaint was filed.
During the marriage, defendant worked as a crane operator earning approximately $120,000 per year in gross salary including regular overtime, or approximately $7,800 per month net of taxes and other mandated deductions.[1] After Heather completed the first grade, plaintiff returned to work and earned approximately $13,000 to $14,000 per year working at various part-time jobs as a data entry clerk, bank teller, and cosmetics salesperson. Plaintiff's resumption of employment represented the parties' mutual decision and was necessitated by their need for additional funds to support the household.
In 1989, plaintiff began attending Rutgers University, and earned her undergraduate degree in 1995. She continued to work during college, earning approximately $6000 a year. In 1995, plaintiff enrolled in law school, and earned her law degree in 1998. She did not work during law school[2] and incurred approximately $100,000 in debt to finance her education. After graduating, and during the pendency of the trial, plaintiff served a one-year term as a judicial law clerk at a salary of $30,000 per year. Unfortunately, her first attempt to pass the New Jersey bar examination was unsuccessful. However, following her clerkship, plaintiff secured employment at a law firm at a salary of $33,000 per year. Although plaintiff's reply brief and a letter filed pursuant to R. 2:6-11(d), state that her two subsequent attempts to pass the bar examination were unsuccessful and that she was recently terminated from her position at the law firm, we do not consider this information on appeal, as it is not part of the record below. See Monmouth County Div. of Soc. Servs. ex rel. Hall v. P.A.Q., 317 N.J.Super. 187, 195, 721 A.2d 738 (App.Div.1998). However, because we are remanding this matter for further proceedings, the record on remand may be expanded so that the trial judge may consider any current information relevant to the parties' respective positions.
According to plaintiff, she and defendant "had a nice standard of living" during the marriage. They vacationed once every two years, and dined out two or three times a week. Plaintiff indicated that she no longer dines out, and that her "standard of living has substantially dropped" with respect to housing, clothing, and transportation. Although the parties then owned a house in Delran, plaintiff rented an apartment that was more accessible to public transportation and thus more convenient to her work.
During the marriage, defendant worked approximately eighty to ninety hours per week. At the time of trial, he earned $25 per hour but claimed that the mental and physical stress of the job have started to take a toll on his health.
At the conclusion of the trial, the judge found that as of March 22, 1998, defendant earned $1,392 in weekly net income and had reasonable weekly expenses of approximately $553. Thus, exclusive of child support, alimony, Heather's school loan payments, and life insurance payments, defendant had a weekly surplus of $839. The judge found that plaintiff earned $640 per week and had reasonable monthly expenses of $3,035 per month. However, the judge concluded that plaintiff incurred an extraordinary rental expense of $1,000 monthly for her apartment and observed *1044 that plaintiff had a deficit of approximately $66 per month without alimony.
Most significantly, the judge found that this was a long-term marriage, and there was substantial disparity between the parties' incomes. Nevertheless, the judge ordered limited duration alimony in the amount of $200 per week for a period of five years "to enable the plaintiff to establish herself as an attorney." In determining that award, the judge stated:
The Court finds under earning capacity that the plaintiff has the potential to earn an income, substantial income, although she's now earning 30,000, she has a juris doctorate and she's going to be practicing law in the future. The Court finds that under length of absence from the job market, that does not apply to this case even though she was unemployed during the time she was attending school and had part-time employment previously, she is now employed and has the capacity for lucrative employment.
The judge also ordered that the award be reviewed in two years, that defendant pay $75 per week in child support to underwrite Heather's clothing costs and that plaintiff be solely responsible for her own substantial school loans. Responsibility for Heather's college expenses, the parties' taxes and counsel fees, and other financial obligations was allocated between the parties.

I.
Plaintiff's appeal focuses upon the denial of permanent alimony. She asserts that because this was a long-term marriage, limited duration alimony was inappropriate and permanent alimony should have been awarded. She further claims that the award of $200 per week was inadequate.
In exploring the parameters of limited duration alimony, we first examine the statutory basis for alimony, and then review the various forms of alimony, the legislative history relevant to the amended statute, the policy considerations distinguishing permanent and limited duration alimony and finally, the application of those principles to the facts of this case.
We commence our analysis with a restatement of the general principles relevant to any alimony award determination. The award of alimony to a divorcing spouse is provided for by statute: "after judgment of divorce or maintenance ... the court may make such order as to the alimony or maintenance of the parties... as the circumstances of the parties and the nature of the case shall render fit, reasonable and just". N.J.S.A. 2A:34-23. The prevailing principle in fixing an alimony award, as enunciated in Lepis v. Lepis, 83 N.J. 139, 150, 416 A.2d 45 (1980), was recently reiterated by the Supreme Court: "the goal of a proper alimony award is to assist the supported spouse in achieving a lifestyle that is reasonably comparable to the one enjoyed while living with the supporting spouse during the marriage." Crews v. Crews, 164 N.J. 11, 16, 751 A.2d 524 (2000); Innes v. Innes, 117 N.J. 496, 503, 569 A.2d 770 (1990) (citing Mahoney v. Mahoney, 91 N.J. 488, 501-02, 453 A.2d 527 (1982)). "The supporting spouse's obligation is set at a level that will maintain that standard." Innes, supra, 117 N.J. at 503, 569 A.2d 770 (citing Lepis, 83 N.J. at 150, 416 A.2d 45); Heinl v. Heinl, 287 N.J.Super. 337, 344, 671 A.2d 147 (App. Div.1996) (same). See also Crews, supra, 164 N.J. at 16, 24, 751 A.2d 524 (same). In reviewing an alimony award, "[w]e give deference to a trial judge's findings as to issues of alimony, if those findings are supported by substantial credible evidence in the record as a whole." Reid v. Reid, 310 N.J.Super. 12, 22, 708 A.2d 74 (App. Div.), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998); Heinl, supra, 287 N.J.Super. at 345, 671 A.2d 147.
Any award of alimony requires an analysis of the statutory factors to be considered in setting the amount and duration of an award, including: *1045 (1) The actual need and ability of the parties to pay;
(2) The duration of the marriage;
(3) The age, physical and emotional health of the parties;
(4) The standard of living established in the marriage and the likelihood that each party can maintain a reasonably comparable standard of living;
(5) The earning capacities, educational levels, vocational skills, and employability of the parties;
(6) The length of absence from the job market of the party seeking maintenance;
(7) The parental responsibilities for the children;
(8) The time and expense necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment ...;
(9) The history of the financial or non-financial contributions to the marriage by each party ...;
(10) The equitable distribution of property ordered and any payments on equitable distribution, directly or indirectly, out of current income, to the extent this consideration is reasonable, just and fair;
(11) The income available to either party through investment[s] ...;
(12) The tax treatment and consequences to both parties of any alimony award ...; and
(13) Any other factors which the court may deem relevant.

[N.J.S.A. 2A:34-23(b)(1)-(13).]
As a result of a recent statutory amendment, courts may now award one or more of the following types of alimony: permanent, rehabilitative, reimbursement, or limited duration. N.J.S.A. 2A:34-23(b). Although the issue raised on this appeal focuses upon limited duration alimony, a brief overview of the evolution of New Jersey's alimony legislation and jurisprudence is conducive to a proper understanding of the rationale for the various alimony types currently available, and the application of limited duration alimony within that context.
Of the four types of alimony now provided for by N.J.S.A. 2A:34-23(b), only permanent alimony was recognized by statute prior to 1988, when the Legislature codified the concept of rehabilitative alimony, L. 1988, c. 153, § 3, as previously explored by the Supreme Court in Lepis, supra, 83 N.J. at 155-56, 416 A.2d 45. See Heinl, supra, 287 N.J.Super. at 348, 671 A.2d 147.
The modified provision for both permanent and rehabilitative alimony reflected the Legislature's adaptive response in recognizing and addressing a supporting spouse's varied and continuing obligations to a dependent spouse as a result of their prior marital relationship. See Greenberg v. Greenberg, 126 N.J.Super. 96, 98, 100, 312 A.2d 878 (App.Div.1973); LaSalla v. LaSalla, 324 N.J.Super. 264, 281, 735 A.2d 52 (Ch.Div.1999), rev'd on other grounds sub nom. LaSala v. LaSala, 335 N.J.Super. 1, 760 A.2d 1122 (App.Div.2000).
Rehabilitative alimony permits a short-term award "from one party in a divorce [to] enable [the] former spouse to complete the preparation necessary for economic self-sufficiency," Hill v. Hill, 91 N.J. 506, 509, 453 A.2d 537 (1982); Milner v. Milner, 288 N.J.Super. 209, 213-14, 672 A.2d 206 (App.Div.1996), "and ceas[es] when the dependent spouse is in a position of self-support," Hughes v. Hughes, 311 N.J.Super. 15, 31, 709 A.2d 261 (App.Div. 1998). Rehabilitative alimony thus represents an appropriate remedy where, for example, "a spouse who gave up or postponed her own education to support the household requires a lump sum or a short-term award to achieve economic self-sufficiency." Mahoney, supra, 91 N.J. at 504, 453 A.2d 527. Its purpose is to "enhance and improve the earning capacity of the economically dependant spouse." Frank Louis, Limited Duration Alimony, 11 N.J. Fam. Law. 133, 135 (1991). The focus of *1046 rehabilitative alimony is upon the ability of a dependant spouse to engage in gainful employment, combined with the length of the marriage, the age of the parties, Heinl, supra, 287 N.J.Super. at 346-48, 671 A.2d 147, and the spouse's ability to regain a place in the workplace, Cerminara v. Cerminara, 286 N.J.Super. 448, 460, 669 A.2d 837 (App.Div.), certif. denied, 144 N.J. 376, 676 A.2d 1091 (1996). It is not to be considered an exclusive remedy, as "[r]ehabilitative alimony in addition to permanent alimony is favored, where appropriate." Hughes, supra, 311 N.J.Super. at 32, 709 A.2d 261.
By further amendment to N.J.S.A. 2A:34-23(b), effective September 13, 1999, the Legislature recognized two additional forms of alimonyreimbursement alimony and limited duration alimony. L. 1999, c. 199, § 1.
Reimbursement alimony has previously been characterized as "not truly support but an equitable creation designed to eliminate injustice." Louis, Limited Duration Alimony, supra, at 137. See Mahoney, supra, 91 N.J. at 500-01, 503 & n. 5, 453 A.2d 527. It is intended to compensate a spouse who has made financial sacrifices resulting in a reduced standard of living by enabling the other spouse to forego gainful employment while securing an advanced degree or professional license to enhance the parties' future standard of living. Id. at 500-01, 453 A.2d 527; N.J.S.A. 2A:34-23(e). Reimbursement alimony is thus limited to "monetary contributions made with the mutual and shared expectation that both parties to the marriage will derive increased income and material benefits." Mahoney, supra, 91 N.J. at 502-03, 453 A.2d 527. See also Reiss v. Reiss, 200 N.J.Super. 122, 125, 490 A.2d 378 (Ch.Div.1984), aff'd, 205 N.J.Super. 41, 500 A.2d 24 (App.Div.1985) (questioning whether reimbursement alimony is truly alimony as it based primarily on past contributions rather than future needs). As in the case of rehabilitative alimony, reimbursement alimony may be awarded separately or in combination with any other form of alimony. N.J.S.A. 24:34-23(f).
While we shall discuss both limited duration and permanent alimony in more detail, infra, certain distinctions between the various forms of alimony are readily apparent. The focus of limited duration alimony is distinctly different from that of rehabilitative or reimbursement alimony. Limited duration alimony is not intended to facilitate the earning capacity of a dependant spouse or to make a sacrificing spouse whole, but rather to address those circumstances where an economic need for alimony is established, but the marriage was of short-term duration such that permanent alimony is not appropriate. Those circumstances stand in sharp contrast to marriages of long duration where economic need is also demonstrated. In the former instance, limited duration alimony provides an equitable and proper remedy. In the latter circumstances, permanent alimony is appropriate and an award of limited duration alimony is clearly circumscribed, both by equitable considerations and by statute.

II.
We now address the language and legislative history of the statutory amendment permitting an award of limited duration alimony. We briefly restate the general principles applicable to our analysis. The plain language of a statute is paramount in determining its proper meaning and application unless that language is inconsistent with manifest legislative intent or another meaning expressly indicated. Innes, supra, 117 N.J. at 505-12, 569 A.2d 770; Nebinger v. Maryland Cas. Co., 312 N.J.Super. 400, 406, 711 A.2d 985 (App. Div.1998). N.J.S.A. 2A:34-23(c) plainly describes the relevant considerations and findings requisite in determining whether limited duration alimony is appropriate, and provides in pertinent part:
In any case in which there is a request for an award of permanent alimony, *1047 the court shall consider and make specific findings on the evidence about the [factors delineated by N.J.S.A. 2A:34-23(b), supra]. If the court determines that an award of permanent alimony is not warranted, the court shall make specific findings on the evidence setting out the reasons therefor. The court shall then consider whether alimony is appropriate for any or all of the following: (1) limited duration; (2) rehabilitative; (3) reimbursement. In so doing, the court shall consider and make specific findings on the evidence about factors set forth above. The court shall not award limited duration alimony as a substitute for permanent alimony in those cases where permanent alimony would otherwise be awarded. [N.J.S.A. 2A:34-23(c) (emphasis added).]
The amendment's legislative history fully comports with its edict that limited duration alimony is an inappropriate substitute where permanent alimony is warranted. As explained in the initial sponsors' statement prior to a Senate Committee Substitute adding reimbursement alimony to the proposed legislation:
Under current law, the courts may award two types of alimony: permanent alimony, which is intended to compensate a spouse for an economic dependency created by the marriage, and rehabilitative alimony, which is intended for specific educational or training purposes and is of short duration. This bill would establish limited duration alimony as a third type of alimony, to be used in those cases involving shorter-term marriages where permanent or rehabilitative alimony would be inappropriate or inapplicable but where, nonetheless, economic assistance for a limited period of time would be just.
....

The bill specifically provides that the court shall not award limited duration alimony as a substitute for permanent alimony in those cases involving long-term marriages where permanent alimony would otherwise be awarded under current law....
[S. No. 54, at 6-7, 208th Leg. (N.J. 1998) (statement of Sens. Kavanaugh & Martin) (emphasis added) (citing Report of the Commission to Study the Law of Divorce, Recommendation 13 (Apr. 18, 1995)) ["Divorce Study Commission Report".]
The statement also confirms the processes contemplated by the sponsors for determining whether limited duration alimony is warranted under the amended provision:
The bill provides that, in any case where a party requests an award of permanent alimony, the court would first be required to consider and make specific findings on a number of factors, including the need and ability of the parties to pay, the duration of the marriage, the health of the parties, their standard of living and their earning capacities. After this threshold determination, if the court determines that an award of permanent alimony is not warranted it would then consider whether limited duration alimony is warranted.
[Id. (referring to N.J.S.A. 2A:34-23(b, c).]
Although legislative history and sponsor statements do not bind our interpretation of the amendment, they do inform our decision by providing important insight into the Legislature's intent and the statute's "overall policy and purpose," Cedar Cove, Inc. v. Stanzione, 122 N.J. 202, 211, 213, 584 A.2d 784 (1991); Nebinger, supra, 312 N.J.Super. at 406-07, 711 A.2d 985. See e.g., Innes, supra, 117 N.J. at 504-12, 569 A.2d 770 (reviewing sponsor statements and legislative history of amendment to N.J.S.A. 2A:34-23 in determining income from pension benefits treated as an asset in equitable distribution may not be considered in determining an alimony modification). The amendment's *1048 delineation of procedures to be followed by a trial judge in determining whether limited duration alimony is appropriate is also indicative of legislative intent and further informs our determination of the proper procedure to be followed by trial courts when assessing alimony applications under the amended statutory scheme.
We are satisfied that the described procedures reflect an appropriate framework for trial judges in determining whether limited duration alimony should be awarded. On any application for permanent alimony, it is incumbent upon the trial judge to first "consider and make specific findings on the evidence" as to the statutory factors set forth in N.J.S.A. 2A:34-23(b). N.J.S.A. 2A:34-23(c). See also, R. 1:7-4(a); Crews, supra, 164 N.J. at 25-26, 751 A.2d 524; Filippone v. Lee, 304 N.J.Super. 301, 306-07, 700 A.2d 384 (App.Div.1997); Heinl, supra, 287 N.J.Super. at 347, 671 A.2d 147. If the judge determines that permanent alimony is not warranted, further specific findings setting forth the judge's reasons for that determination must be made. N.J.S.A. 2A:34-23(c). Consideration of any other form of alimony, including limited duration alimony, may follow only after those determinations and findings have been made. Id.
Clearly, limited duration alimony is neither an available option nor an appropriate remedy in all dissolution cases. In considering alimony applications under the new statutory scheme, judges should bear in mind that an award of limited duration alimony must reflect the underlying policy considerations which distinguish this form of alimony from rehabilitative and reimbursement alimony. Conceptually, limited duration alimony is more closely related to permanent alimony than to rehabilitative or reimbursement alimony. The latter two types of alimony represent forms of limited spousal support for specified purposes; once the purpose is achieved, entitlement to that form of alimony ceases. Permanent and limited duration alimony, by contrast, reflect the important policy of recognizing that marriage is an adaptive economic and social partnership, and an award of either validates that principle.
A noted scholar has described the principle and its application to alimony awards:
According to the marital partnership principle, the married couple forms an economic unit. The contributions of both husband and wife to this unit are valuable regardless of whether the contributions are financial or nonfinancial. For example, the New York Court of Appeals recently stated: "Equitable distribution was based on the premise that a marriage is, among other things, an economic partnership to which both parties contribute as spouse, parent, wage earner or homemaker." Similarly, the New Jersey Supreme Court has stated that "marriage is a shared enterprise, a joint undertaking, that in many ways is akin to a partnership."
....
While marital partnership theory initially gained prominence in connection with the development of laws on property distribution, it is also directly relevant to the issue of alimony.
....
Whether the subject is property division, spousal support, or other legal issues touching on the marital relationship, it is appropriate to remember
that marriage is a joint enterprise whose vitality, success and endurance is dependent upon the conjunction of multiple components, only one of which is financial. The nonremunerated efforts of raising children, making a home, performing a myriad of personal services and providing physical and emotional support are, among other noneconomic ingredients of the marital relationship, at least as essential to its nature and maintenance as are the economic factors, and their worth is consequently entitled to substantial recognition.

*1049 [Sally F. Goldfarb, Marital Partnership and the Case for Permanent Alimony, 27 J. Fam. L. 351, 354-55 (1988-89) (footnotes omitted).]
Where analysis of the statutory factors within the context of this marital partnership principle suggests an award of permanent alimony, the exclusive use of rehabilitative or reimbursement alimony is clearly contraindicated.
Limited duration alimony accommodates the marital partnership principle by "recogniz[ing] in certain marriages that a permanent alimony orderor no alimony award at allis an injustice, and [that] the law must provide sufficient flexibility to enter orders fulfilling not only the statutory directives but the fundamental purposes of alimony." Louis, Limited Duration Alimony, supra, at 137. This flexibility mandates an appropriate judicial analysis of the statutory factors when contemplating an award of more than reimbursement or rehabilitative alimony, the former being awarded to recognize past forbearances and the latter to meet fixed future needs.
Indeed, in recommending legislative recognition of limited duration alimony,[3] the Divorce Study Commission observed:
Providing the power to award limited duration alimony, subject to safeguards and only after an analysis of carefully crafted statutory factors, will permit the courts to mold their decision[-]making to the facts presented without the artificial constraints now presented by only having the options of awarding rehabilitative alimony, permanent alimony or no alimony at all.
[Divorce Study Commission Report, supra, at 46.]
The Commission also suggested statutory factors to be considered by a trial judge:
In developing the statutory factors, the Commission's intent is to direct the court to focus upon the economic impact of the marriage on the parties by examining whether employment opportunities were lost or career opportunities delayed. In addition the court would inquire into any advantages obtained by either spouse by the equitable distribution award. All these must be inter-related with all relevant economic factors in determining whether any economic dependency that might exist between the parties was created by the marriage or was the product of the parties' disparate skills and educational opportunities, unrelated to anything that happened during the marriage. The court's inquiry would focus not on the fact that the parties were married but upon the impact of the marriage on the parties.
The proposed legislation would also require the court to inquire whether either of the parties were economically disadvantaged by child-rearing responsibilities for children of the marriage.
The legislation would also require the court to consider, in determining the length of time that the limited duration award would last, the length of time it would reasonably take for the spouse seeking support to improve his or her earning capacity to a level where limited *1050 duration alimony is no longer appropriate.

[Id. at 46-47.]
The Commission then proffered recommendations regarding modifications and termination of limited duration alimony awards:
The legislation would provide that the amount of an award of limited duration alimony might be modified by the court based on "changed circumstances" pursuant to the case law governing modification of permanent alimony awards, but that the length of the term during which the payments would be made could not [be] changed.
The legislation would provide that the obligation to pay limited duration alimony would terminate upon the death of either party or the remarriage of the recipient.

[Id. at 47.]
Finally, the Commission identified those circumstances which would preclude an award of limited duration alimony:
Under the legislation, if as a result of the marriage, the dependent spouse was economically disadvantaged to such a significant degree that economic assistance for a limited period of time would be inadequate, then limited duration alimony would not be considered.
Limited duration alimony is not intended to be a replacement for permanent alimony where the length of the marriage and the contributions made by the dependent spouse are significant. In particular, it is singularly inappropriate in long marriages. It is, therefore, the clear and unequivocal view of the Commission that such term alimony should be limited to shorter marriages and not be ordered in long-term marriages.

[Id. at 47 (footnote omitted).]
The Commission's recommendations provided the template for the legislation ultimately adopted and resolved ongoing concerns regarding whether the pre-amendment statutory framework could support the concept of term alimony. Compare Lepis, supra, 83 N.J. at 155 & n. 9, 416 A.2d 45 (disapproving "the view that only unusual cases will warrant the `rehabilitative alimony' approach"), with Weber v. Weber, 211 N.J.Super. 533, 537, 512 A.2d 494 (App.Div.1986) (noting that a sua sponte order for termination of a modified permanent award three years hence was inappropriate absent evidence of circumstances warranting limited duration).
The legislative preclusion of limited duration alimony awards in the dissolution of long-term marriages also addressed the additional concern that limited duration awards might be misused to "free the obligor spouse from the payment burden" by simply reducing a long-term spouse's standard of living over a fixed period of years. Joan M. Krauskopf, Rehabilitative Alimony: Uses and Abuses of Limited Duration Alimony, 21 Fam. L.Q. 573, 575 (1988). The legislature recognized that although limited duration alimony provides a proper remedy in appropriate cases, its misuse to eliminate a partner-spouse's proper award of permanent alimony cannot be permitted.
An understanding of the purpose of permanent alimony lends further insight into the proper use and application of limited duration alimony. The most commonly expressed rationale for permanent alimony is:
1. To compensate for benefits conferred on the other spouse by being responsible for home making and child rearing. The primary benefit is increased earning capacity of the other spouse who, while enjoying family life, was free to devote all productive time to income production.
2. To compensate for the opportunity costs of homemaking. This is primarily lost earning capacity through the years of major responsibility for the home, either not being employed or holding employment subject to the needs of the family. Courts recognize *1051 this opportunity cost when they refer to the fact that the claimant for alimony had remained in the home in the traditional role of full-time homemaker. There is, also, a cost in lessened opportunity for remarriage which is greater for women than men and which increases the longer the marriage lasts.
In short, "a transfer of earning power" occurs during a traditional marriage in which the homemaker spouse's efforts increased the other's earning capacity at the expense of her own. Alimony is an award formulated to compensate for that transfer by sufficiently (fairly) meeting reasonable needs for support not otherwise met by property division and personal income.
[Krauskopf, Rehabilitative Alimony, supra, at 583-84 (footnotes omitted).]
This analysis applies to limited duration alimony as well. Limited duration alimony is to be awarded in recognition of a dependent spouse's contributions to a relatively short-term marriage that nevertheless demonstrated the attributes of a "marital partnership" as described by Professors Goldfarb and Krauskopf. In determining whether to award limited duration alimony, a trial judge must consider the same statutory factors considered in any application for permanent alimony, tempered only by the limited duration of the marriage. All other statutory factors being in equipoise, the duration of the marriage marks the defining distinction between whether permanent or limited duration alimony is warranted and awarded.

III.
Applying the above principles to this appeal, we conclude that the trial judge failed to perform a proper analysis of the statutory factors and to set forth the requisite findings as to why permanent alimony was not warranted. Because this was a twenty-two year marriage, permanent alimony should have been awarded absent a clear statement of reasons to the contrary. That issue must be addressed on remand.
The nature of the award indicates that the judge focused upon considerations more appropriate to rehabilitative alimony than to limited duration alimony. The award reflected a fixed period and a stated purpose of need terminating upon the trial judge's perception of when plaintiff would be economically independent. There was little acknowledgment that this twenty-two year marriage[4] represented a marital partnership. Absent that recognition, both the reasoning and the award were deficient.
We also question the judge's requirement that the parties return in two years to review the status of plaintiff's award. While on its face, such an order would appear to benefit plaintiff, on reflection, it inures to her detriment. The alimony statute clearly confines the scope of permissible modifications to limited duration alimony awards based upon changed or nonoccuring circumstances to amount only, absent unusual circumstances warranting a change in duration. N.J.S.A. 2A:34-23(c). By requiring a review after two years, presumably requiring plaintiff to show why the award should be continued for the full five-year period as originally ordered, the trial judge has shifted the burden from the paying spouse to seek modification, to the receiving spouse to continue the alimony awarded. See Crews, supra, 164 N.J. at 28, 751 A.2d 524 (noting that party seeking modification of an alimony award bears the burden to demonstrate changed circumstances warranting relief from support or maintenance obligations) (citing Lepis, supra, 83 N.J. at 157, 416 A.2d 45); Innes, supra, 117 N.J. 496 at 504, 569 A.2d 770 (same). Cf., Weber, supra, 211 N.J.Super. at 537, 512 A.2d 494 (prohibiting sua sponte order limiting duration of permanent alimony upon changed circumstances where no additional *1052 evidence was adduced justifying that limitation). Although the judge did not address this issue, if there is to be a review, the burden to demonstrate that continuance of the award is no longer necessary must be assumed by the paying spouse. See Weber, supra, 211 N.J.Super. at 537, 512 A.2d 494.
In sum, we conclude that the award of limited duration alimony here was inappropriate. The nature of the award was, in fact, rehabilitative, and it failed to account for the various contributions of plaintiff as a homemaker, child-rearer, and "marital partner" for the duration of this twenty-two year marriage.
Because we are ordering a remand and requiring the trial judge to consider all of the relevant statutory factors, we need not determine whether the award of $200 per week was an appropriate amount. We observe, however, that while defendant is responsible for Heather's college costs, plaintiff is burdened with the cost of her own higher education debts. The trial judge's findings on this issue failed to carefully analyze the financial impact and duration of those significant obligations, as well as to make the clear and definitive findings as to the parties' marital standard of living which are essential to any permanent alimony award determination. See Crews, supra, 164 N.J. at 16-17, 24, 751 A.2d 524. We caution that in identifying these few considerations, we do not imply that an abbreviated analysis of the other relevant statutory factors would be appropriate on remand.
Under proper circumstances, an award of limited duration alimony may provide an effective and just method of support consistent with the needs of a dependent spouse. The proper use of limited duration alimony, however, is clearly governed by the statute's plain language, as well as by the equitable principles we have identified. It must be used with caution to avoid inappropriate application where permanent alimony is warranted. Its availability does not eliminate the need for a careful analysis of the statutory factors and proper recognition of the parties' respective contributions to the marriage.
Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] Although reference to tax returns appear in the record, the appendix contains neither case information statements, R. 5:5-2(a); Appendix V, nor the tax returns required to be attached to those statements.
[2] Plaintiff earned minimal income as a faculty research assistant.
[3] The Commission recommendation stated:

After studying the topic, the Commission concluded that the statutes should recognize a third type of alimony, in addition to rehabilitative alimony (short duration; specific educational or training purpose) and permanent alimony (lifetime duration, unless the recipient remarries; general purpose of compensating the recipient's economic dependency). This third type, limited duration alimony, would address the factual circumstances that are presented in some of the cases that are heard in the Family Part. These cases generally involve a marriage of short duration where permanent or rehabilitative alimony would be inappropriate or inapplicable but where, nonetheless, economic assistance for a limited period of time would be just. [Divorce Study Commission Report, supra, at 43.]
[4] Neither party argued that this twenty-two year union was not a "long-term" marriage.