******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARY LOU DAN *v.* MICHAEL T. DAN
(SC 19054)

Rogers, C. J., and Palmer, Zarella, McDonald, Robinson and Vertefeuille, Js.

*Argued April 22—officially released December 16, 2014*

*Charles D. Ray*, with whom was *Lee F. Lizotte*, for

the appellant (defendant).

*George J. Markley*, for the appellee (plaintiff).

*Louise Truax* filed a brief for the Connecticut Chapter of the American Academy of Matrimonial Lawyers as amicus curiae.

*Opinion*

ZARELLA, J. The primary issue that we must resolve in this certified appeal is whether the trial court may modify a judgment, rendered in accordance with a stipulated alimony award, solely on the basis of an increase in the income of the supporting spouse. Approximately ten years after the plaintiff, Mary Lou Dan, and the defendant, Michael T. Dan, were divorced, the plaintiff filed a motion for modification of the stipulated alimony award pursuant to General Statutes § 46b-86,[1] claiming that the circumstances of the case had changed substantially because the defendant's income had increased significantly and the plaintiff's medical costs had "skyrocketed." At the outset of the evidentiary hearing on the motion, the parties stipulated that there was a substantial change in circumstances because the defendant's income had substantially increased. Thereafter, the trial court granted the plaintiff's motion for modification and substantially increased the amount of alimony that the defendant was required to pay to the plaintiff. The defendant appealed to the Appellate Court, claiming that the trial court had abused its discretion as a matter of law by increasing the alimony award when the sole change in circumstances was an increase in his income. *Dan* v. *Dan*, 137 Conn. App. 728, 729, 731 n.4, 49 A.3d 298 (2012). The Appellate Court upheld the trial court's decision to grant the motion. See id., 733. This court then granted the defendant's petition for certification to appeal to this court on the following issue: "Did the Appellate Court properly [uphold] the trial court's granting of the plaintiff's motion for modification based [on] a change in circumstances?"[2] *Dan* v. *Dan*, 307 Conn. 924, 55 A.3d 565 (2012). We conclude that, in the absence of certain exceptional circumstances, which we explain hereinafter, an increase in income, standing alone, does not justify the modification of an alimony award. We further conclude that, because the trial court did not expressly address the issue of whether such exceptional circumstances exist in the present case, the Appellate Court improperly upheld the trial court's decision to grant the plaintiff's motion, and the case must be remanded to the trial court for a new hearing at which the proper standard may be applied.

The record reveals the following procedural history and facts that are undisputed or that were found by the trial court. The parties were divorced in 2000 after more than twenty-nine years of marriage. They had three children, all of whom had attained the age of majority before the divorce. In accordance with a stipulation between the parties, the trial court, *Sheedy, J.*, awarded the plaintiff $15,000 per month in alimony, as well as a sum equal to 25 percent of any bonus income that the defendant received. The parties also agreed that the defendant's alimony obligation would cease when

he reached the age of sixty-five or his retirement, whichever occurred first.[3]

In 2010, the plaintiff filed a motion for modification of the alimony award pursuant to § 46b-86, claiming that the defendant's income had "greatly increased" and that her medical expenses had "skyrocketed." After an evidentiary hearing on the motion before the court, *Winslow, J.*,[4] the court found that the plaintiff had not proven her claim that there was a substantial change in her circumstances because of an increase in her out-of-pocket medical expenses. The defendant conceded during the hearing, however, that he had a substantial increase in his income since the divorce and that this constituted a substantial change in circumstances for purposes of § 46b-86. Accordingly, the sole issue before the court was whether the statutory factors set forth in General Statutes (Rev. to 2011) § 46b-82 (a)[5] justified a modification of the alimony award.

The trial court ultimately found that the defendant's base salary in 2000 was $696,000. In 2010, his annual salary was $3.24 million, plus $3 million in stock option cash-ins. The court also found that the defendant worked "excessively long hours and that is obviously something that relates to some of his compensation." Apart from the alimony that the plaintiff received from the defendant, the plaintiff had annual income of between $8000 and $12,000. The court further found that, as of 2011: the plaintiff was sixty-one years old; the defendant was sixty years old; the plaintiff had several health problems, including diabetes that was poorly controlled, which circumstance had existed at the time of the divorce; the plaintiff had no college degree; and, although she had once worked as a receptionist and executive assistant, she had not been employed since 1977.

Addressing the statutory factors set forth in § 46b-82, the trial court stated that it had not "given much weight at all to the needs of the parties" because "the income level of the defendant makes [it] unnecessary [to inquire] into the actual needs of the parties. There is more than enough income to meet and exceed the needs of each party."[6] The court also stated that it did not "weigh heavily" the estate of either party and gave "virtually no or little weight" to the cause of the dissolution. Rather, the factors that the court had considered important "were the length of the marriage, the health of the parties, the station and occupation of the parties, the amount and sources of income, [and] the vocational skills of the parties." On the basis of these factors, the court increased the alimony award from $15,000 to $40,000 per month, plus 25 percent of any bonus income that the defendant received, and ordered that the alimony, instead of terminating when the defendant reached the age of sixty-five, would continue until the plaintiff's death, remarriage or cohabitation. The court

also stated, however, that the defendant's retirement might constitute a substantial change in circumstances justifying a modification of the alimony award.

After the trial court issued its oral decision, the defendant filed a motion for articulation in which he requested that the court clarify whether it had considered the "§ 46b-82 factors 'anew,' or [whether] it consider[ed] only any difference in the factors that occurred from the date of dissolution until the date of modification . . . ."[7] In addition, the defendant requested that the court "articulate the factual and legal basis for [its] decision to extend the term of [the defendant's] alimony obligation beyond that set forth in the parties' [stipulation], and beyond that requested by the plaintiff . . . ." The court granted the motion for articulation. With respect to the defendant's first request, the court stated that it "could not and did not attempt to ascertain the status of each additional criterion at the time of the dissolution judgment. The court looked at all the criteria currently." With respect to the defendant's second request, the court stated that it had continued the defendant's alimony obligation beyond his sixty-fifth birthday because "[the] cessation of alimony on a date certain would be inequitable in light of the dramatic change in the parties' circumstances now apparent ten years after the [parties'] divorce."

The defendant appealed to the Appellate Court from the trial court's decision to grant the plaintiff's motion for modification. The Appellate Court concluded that the trial court "reasonably determined that, considering the length of the parties' marriage, the health of the parties, the amount and sources of income and the vocational skills of the parties, the defendant's alimony should be increased." *Dan* v. *Dan*, supra, 137 Conn. App. 732. This certified appeal followed.[8]

On appeal, the defendant contends that, contrary to the Appellate Court's conclusion, (1) the trial court improperly granted the plaintiff's motion for modification solely on the basis of the defendant's increased income, (2) even if the trial court properly granted the motion for modification, the substantial increase in alimony was an abuse of discretion, and (3) the trial court improperly considered the statutory criteria in § 46b-82 anew rather than limiting its consideration to the criteria that had changed since the date of dissolution. We agree with the defendant that, when the only substantial change in circumstances after an award of alimony has been made is an increase in the income of the paying spouse, a modification of the alimony award ordinarily is not justified if the original award was and continues to be sufficient to fulfill the original purpose for which it was made. We further conclude that, because the trial court made no finding as to whether the original alimony award continues to be sufficient to meet its original purpose, the case must be remanded

for a new hearing at which the court may apply the proper standard in making such a finding. Accordingly, we need not address the issues of whether the trial court abused its discretion when it substantially increased the award or properly considered factors that have not changed since the date of dissolution in determining the amount of the modification.

We begin our analysis with a review of the legal principles governing the modification of alimony awards. "It is . . . well established that when a party, pursuant to § 46b-86, seeks a postjudgment modification of a dissolution decree . . . he or she must demonstrate that a substantial change in circumstances has arisen subsequent to the entry of the [decree]." *Borkowski* v. *Borkowski*, 228 Conn. 729, 736, 638 A.2d 1060 (1994). "Once a trial court determines that there has been a substantial change in the financial circumstances of one of the parties, the same criteria that determine an initial award of alimony . . . are relevant to the question of modification." (Internal quotation marks omitted.) Id., 737.

"Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order. In making such an inquiry, the trial court's discretion is essential. The power of the trial court to modify the existing order does not, however, include the power to retry issues already decided . . . or to allow the parties to use a motion to modify as an appeal. . . . Rather, the trial court's discretion includes only the power to adapt the order to some distinct and definite change in the circumstances or conditions of the parties." (Citations omitted.) Id., 738.

Although it is well established that an increase in the income of the paying spouse, standing alone, "is sufficient to *justify reconsideration* of a prior alimony order" pursuant to § 46b-86; (emphasis added) *McCann* v. *McCann*, 191 Conn. 447, 451, 464 A.2d 825 (1983); this court has not yet had occasion to determine whether this change in circumstance, standing alone, is ordinarily a sufficient reason to *grant* a motion to modify an alimony award in accordance with the criteria set forth in § 46b-82. In *McCann*, the plaintiff, who was appealing from the trial court's upward modification of his alimony obligation; id., 449; contended that "an increase in the income of the payor spouse is not a sufficient reason to increase an alimony award. . . . [In the absence of] a showing of need, [the supported] spouse should not be provided with a lifetime profit-sharing plan." Id., 451–52. This court concluded that, "[w]hatever merits this contention might have in a case to which it was factually apposite, it [was] unpersuasive [in that case] in light of the defendant's unmet medical needs, which were established at the time of the original

decree and have increased since that time."[9] Id., 452.

For the following reasons, we now conclude that an increase in the supporting spouse's income, standing alone, ordinarily will not justify the granting of a motion to modify an alimony award. Historically, alimony was "based [on] the continuing duty of a divorced husband to support an abandoned wife and should be sufficient to provide her with the kind of living [that] she might have enjoyed but for the breach of the marriage contract by the [husband]." *Wood* v. *Wood*, 165 Conn. 777, 784, 345 A.2d 5 (1974); see also *Demont* v. *Demont*, 67 So. 3d 1096, 1102 (Fla. App. 2011) ("[p]ermanent periodic alimony is used to provide the needs and necessities of life to a former spouse *as they have been established during the marriage*" [emphasis added; internal quotation marks omitted]). One reason for the abandoned spouse's entitlement to sufficient alimony to ensure the continued enjoyment of the standard of living that he or she enjoyed during the marriage is that the spouse's "efforts increased the other's earning capacity at the expense of [his or] her own." (Internal quotation marks omitted.) *Cox* v. *Cox*, 335 N.J. Super. 465, 483, 762 A.2d 1040 (App. Div. 2000); see also id. ("[a]limony is an award formulated to compensate for [a] transfer [of earning power from nonworking spouse to working spouse] by sufficiently . . . meeting reasonable needs for support not otherwise met by property division and personal income" [internal quotation marks omitted]).

More "[r]ecently . . . courts have begun to limit the duration of alimony awards in order to encourage the receiving spouse to become self-sufficient. Underlying the concept of time limited alimony is the sound policy that such awards may provide an incentive for the spouse receiving support to use diligence in procuring training or skills necessary to attain self-sufficiency." (Internal quotation marks omitted.) *Roach* v. *Roach*, 20 Conn. App. 500, 506, 568 A.2d 1037 (1990).

There is little, if any, legal or logical support, however, for the proposition that a legitimate purpose of alimony is to allow the supported spouse's standard of living to match the supporting spouse's standard of living *after* the divorce, when the supported spouse is no longer contributing to the supporting spouse's income earning efforts. Rather, the weight of authority is to the contrary.[10] We are persuaded by the reasoning of these cases, namely, that, when the amount of the original alimony award was and continues to be sufficient to fulfill the purpose of the award, whether that purpose was to maintain permanently the standard of living of the supported spouse at the level that he or she enjoyed during the marriage or to provide temporary support in order to allow the supported spouse to become self-sufficient, an increase in the income of the supporting spouse, standing alone, is not a sufficient justification to modify an alimony award.[11] In short, when the *sole*

change in circumstances is an increase in the income of the supporting spouse, and when the initial award was and continues to be sufficient to fulfill the intended purpose of that award, we can conceive of no reason why the supported spouse, whose marriage to the supporting spouse has ended and who no longer contributes anything to the supporting spouse's income earning efforts, should be entitled to share in an improved standard of living that is solely the result of the supporting spouse's efforts.[12]

When the initial award was not sufficient to fulfill the underlying purpose of the award, however, an increase in the supporting spouse's salary, in and of itself, may justify an increase in the award. For example, if the initial alimony award was not sufficient to maintain the standard of living that the supported spouse had enjoyed during the marriage because the award was based on a reduction in the supporting spouse's income due to unemployment or underemployment as a result of an economic downturn, and, after the divorce, the supporting spouse's income returns to its previous level, a modification might well be justified.[13] Cf. *McCann* v. *McCann*, supra, 191 Conn. 449–50 (when supported spouse's needs were not met by original alimony award and had increased since that time, increase in supporting spouse's income justified modification of award).

In reaching this conclusion, we are mindful that § 46b-86 (a) broadly provides that an alimony award may be "modified by the court upon a showing of a substantial change in the circumstances of either party" and that a "trial court's discretion is essential" when it determines whether a modification is justified. *Borkowski* v. *Borkowski*, supra, 228 Conn. 738. The trial court's discretion to modify an award, however, is not unlimited. Rather, the court's discretion must be cabined by the public policies underlying the statutes governing dissolution of marriage and by the general purposes of alimony awards. Because, as a general rule, no public policy or purpose of an alimony award would be advanced by the modification of an alimony award when the only change in circumstance is an increase in the supporting spouse's income, we must conclude that, as a general rule, the trial court has no discretion to modify an alimony award if this is the only change in circumstances. We emphasize, however, that this is only a general rule, and trial courts retain discretion to modify alimony awards under these circumstances upon finding that exceptional circumstances exist.

Finally, we conclude that, in making the determination as to whether an alimony award should be modified when the *only* change in circumstances has been an increase in the supporting spouse's income, the trial court may consider factors such as the length of the marriage, the cause of the divorce, and the age, station,

vocational skills and employability of the parties—factors that were presumptively considered by the court in determining the purpose and amount of the initial alimony award and that have not changed since that time—only to the extent that the factors shed light on the intent of the initial award.[14] They should not be considered as reasons for *changing* the purpose of the initial award. See *Borkowski* v. *Borkowski*, supra, 228 Conn. 738 ("[t]he power of the trial court to modify the existing order does not . . . include the power to retry issues already decided"); id. (motion for modification cannot be used as appeal, and "the trial court's discretion incudes only the power to adapt the [existing alimony] order to some distinct and definite *change* in the circumstances or conditions of the parties" [emphasis added]).

In the present case, it is reasonable to conclude, in the absence of any suggestion to the contrary, that the purpose of the original alimony award, which was based on the stipulation of the parties, both of whom were represented by counsel, was to allow the plaintiff to maintain the standard of living that she had enjoyed during the marriage. We presume that the parties agreed that the amount of the award was sufficient to fulfill that purpose at the time of the divorce. See *Montoya* v. *Montoya*, 280 Conn. 605, 613, 909 A.2d 947 (2006) ("we assume a deliberately prepared and executed agreement reflects the intention of the parties" [internal quotation marks omitted]); see also *In re Marriage of Weber*, 337 Or. 55, 69, 91 P.3d 706 (2004) ("[t]he parties' own resolution of the spousal support issue is entitled to great weight"). Indeed, the plaintiff makes no claim to the contrary. The trial court found that the plaintiff had not proved that her medical expenses had increased since the date of the original alimony award, and, other than the increase in the defendant's income, those expenses were the only changed circumstance that the plaintiff had alleged in her motion for modification. In addition, the court expressly stated that it did not "agree that [the plaintiff has] trouble meeting her expenses on her current budget." The trial court made no express finding, however, as to whether the original award continues to be sufficient to allow the plaintiff to maintain the standard of living that she enjoyed during her marriage to the defendant, a question that is distinct from the question of whether her current expenses are being met. Accordingly, we conclude that the Appellate Court improperly upheld the trial court's decision to grant the plaintiff's motion for modification and that the case must be remanded to the trial court so that the court may apply the proper standard in accordance with the guidance that we have provided in this opinion.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to the trial court for further proceedings consistent

with this opinion.

In this opinion the other justices concurred.

[1] General Statutes § 46b-86 provides in relevant part: "(a) Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support, an order for alimony or support pendente lite or an order requiring either party to maintain life insurance for the other party or a minor child of the parties may, at any time thereafter, be continued, set aside, altered or modified by the court upon a showing of a substantial change in the circumstances of either party . . . ."

[2] This court also granted certification to appeal on the following issue in the event that this court answered the first certified question in the affirmative: "If [the answer to the first certified question is 'yes'], did the Appellate Court properly reject the defendant's claim that the trial court [had] abused its discretion by considering anew all the statutory criteria set forth in General Statutes [Rev. to 2011] § 46b-82, rather than limiting its decision to those factors that had changed since the date of dissolution?" *Dan* v. *Dan*, 307 Conn. 924, 55 A.3d 565 (2012). In light of our determination that the Appellate Court improperly upheld the trial court's decision to grant the plaintiff's motion for modification and our remand of the case for a new hearing, we need not address the second certified question.

[3] The defendant's alimony obligation also could cease upon the plaintiff's death, marriage or cohabitation.

[4] Because the propriety of Judge Winslow's ruling on the plaintiff's motion for modification is the sole issue in this appeal, hereinafter, all references to the trial court are to the court, *Winslow, J.*

[5] General Statutes (Rev. to 2011) § 46b-82 (a) provides in relevant part: "In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

Hereinafter, all references to § 46b-82 are to the 2011 revision.

[6] The trial court further stated that, although it was not giving great weight to the needs of the parties, it did not "agree that [the plaintiff has] trouble meeting her expenses on her current budget. I do not accept that. She makes choices, and, in particular, she gives away [upward] of $8500 a month by way of gifts to her children. This is a legitimate expense in her eyes, and I'm not faulting her for it, but I'm not indicating either that she's unable to put bread on her table."

[7] After the trial court issued its decision from the bench, the court clerk issued a written order summarizing the ruling. The order, which was not reviewed or approved by the trial court, stated that the court had considered the estate of the parties when it modified the alimony award. In his motion for articulation, the defendant asked the court to clarify this statement, and the court stated that it was a scrivener's error.

[8] After oral argument before this court, this court invited the Connecticut Chapter of the American Academy of Matrimonial Lawyers (Academy) to file an amicus curiae brief addressing two questions: First, "[d]id the Appellate Court properly [uphold] the trial court's granting of the plaintiff's motion for modification based [on] a change in circumstances?" Second, "[i]f so, did the Appellate Court properly reject the defendant's claim that the trial court [had] abused its discretion [in] considering anew all the statutory criteria set forth in . . . § 46b-82 rather than limiting its decision to those factors that had changed since the date of dissolution?" The Academy accepted this invitation and filed an amicus brief, in which it asserted that both questions should be answered in the affirmative. Thereafter, the parties requested permission to file supplemental briefs in response to the amicus brief, which this court granted.

[9] In *Crowley* v. *Crowley*, 46 Conn. App. 87, 699 A.2d 1029 (1997), the Appellate Court rejected the defendant's argument "that Connecticut should adopt the policy, used by some other jurisdictions, that an increase in the income of the payor spouse alone is a legally insufficient reason to support a modification in an alimony award," stating that this court had rejected

the same argument in *McCann*. Id., 93 n.8. This, however, was a misreading of *McCann*. As we explained, in *McCann*, this court determined only that a large increase in the paying spouse's income, standing alone, was a substantial change in circumstances for purposes of *reopening* the award pursuant to § 46b-86. See *McCann* v. *McCann*, supra, 191 Conn. 451. This court declined to address the defendant's claim in that case that an increase in income, standing alone, was not a sufficient reason to *grant* a motion to modify an alimony award. Id., 452. The Appellate Court's interpretation of *McCann* in *Crowley* was dictum, however, as the Appellate Court determined that the trial court's modification of the alimony award in *Crowley* also was based on the plaintiff's increased needs. See *Crowley* v. *Crowley*, supra, 94.

[10] See *Sheeley* v. *Sheeley*, 10 Ariz. App. 318, 321, 458 P.2d 522 (1969) ("An increase in the earning capacity of the husband after the divorce, standing alone . . . is not sufficient [reason to modify an alimony award]. A former wife has no continuing right to share in future accumulations of wealth by her divorced husband."); *Bedell* v. *Bedell*, 583 So. 2d 1005, 1007 (Fla. 1991) ("[T]he court is not required to grant an increase in alimony simply upon proof of a substantial increase in the financial ability of the paying spouse if equity does not dictate that such a change should be ordered. In fact, [the court] would expect that a raise in alimony would be ordered when no increased need was shown only in extraordinary cases [in which] the equitable considerations were particularly compelling."); *Arnold* v. *Arnold*, 332 Ill. App. 586, 598, 76 N.E.2d 335 (1947) ("[t]he station in life to which [the] defendant had accustomed [the] plaintiff at the time of the entry of the decree and prior thereto is the station in life in which he is bound to maintain [for] her now," and plaintiff was not entitled to share in defendant's improved standard of living after divorce); *Council* v. *Council*, 775 So. 2d 628, 630 (La. App. 2000) (increase in supporting spouse's income standing alone does not justify increase in alimony); *Bridgwood* v. *Bridgwood*, 538 A.2d 286, 287 (Me. 1988) ("The record discloses a sufficient improvement in [the supporting spouse's] earnings to warrant the . . . reopening [of] the alimony award. That change of circumstance alone is insufficient to justify an increase in alimony."); *Cole* v. *Cole*, 44 Md. App. 435, 445, 409 A.2d 734 (1979) ("It is manifest that [the] statutory obligation for support and maintenance should not be so interpreted as to continue the rights of the former wife just as though no divorce had been granted. The statute does not contemplate a continuing right in her to share in future accumulations of wealth by her divorced husband, to which she contributes nothing." [Internal quotation marks omitted.]); *Cooper* v. *Cooper*, 62 Mass. App. 130, 140, 815 N.E.2d 262 ("The total support awarded . . . is far in excess of what the record evidence suggests would be needed to maintain the lifestyle enjoyed by the parties while married. In the absence of specific findings, grounded in evidence, that the amount was consistent with that lifestyle, the award cannot stand."), review denied, 443 Mass. 1102, 820 N.E.2d 258 (2004); *Burr* v. *Burr*, 313 Mich. 330, 333, 21 N.W.2d 150 (1946) ("The showing of a somewhat substantial increase in the husband's income is not sufficient ground . . . for modifying the provision for permanent alimony in the original decree. Especially is this true since no showing is made . . . of a change in the needs of [the wife] or the circumstances with which she is surrounded."); *Katter* v. *Katter*, 457 N.W.2d 750, 754 (Minn. App. 1990) (increase in supporting spouse's income, standing alone, is not sufficient ground for modification of alimony award); *Calderwood* v. *Calderwood*, 114 N.H. 651, 653, 327 A.2d 704 (1974) (in determining amount of alimony, court considers "the social standing or station in life enjoyed by [the supported spouse] at the time of the divorce" and, because supported spouse "is not entitled to share in any new prosperity enjoyed by her former [spouse], any improvement in his financial condition since the divorce is irrelevant"); *Crews* v. *Crews*, 164 N.J. 11, 29, 751 A.2d 524 (2000) ("When modification is sought, the level of need of the dependent spouse must be reviewed in relation to the standard of living enjoyed by the couple while married. If that need is met by the current alimony award and there are no other changed circumstances, support should not be increased merely because the supporting spouse has improved financial resources."); *McMains* v. *McMains*, 15 N.Y.2d 283, 288, 206 N.E.2d 185, 258 N.Y.S.2d 93 (1965) ("[a] wife is not entitled to . . . [an] escalation [in alimony] as the husband prospers but she must have minimum support"); *Ward* v. *Ward*, 79 App. Div. 2d 683, 683–84, 433 N.Y.S.2d 861 (1980) ("a substantial increase in the husband's salary does not present a substantial change in circumstances to justify an upward modification of alimony"); *Jan S.* v. *Leonard S.*, 26 Misc. 3d 243, 253, 884 N.Y.S.2d 848 (2009) ("[t]he fact that the supporting spouse's income and means may have

increased does not in itself justify an increase in alimony"); *In re Marriage of Weber*, 337 Or. 55, 68, 91 P.3d 706 (2004) ("a [postdissolution] increase in a payor spouse's income does not of itself ordinarily constitute a substantial change in economic circumstances requiring a court to reconsider a previous spousal support award" [internal quotation marks omitted]); *Ferguson* v. *Ferguson*, Tennessee Court of Appeals, Docket No. 87-305-II (Tenn. App. October 21, 1988) ("The obligee spouse's needs are not controlled by the present standard of living of the obligor spouse. The obligor spouse is not under a duty to raise the standard of living of the obligee spouse from that which was ordered at the time of the divorce to a standard which he can afford at this time. . . . A former spouse does not have a continuing right to share in future accumulation of wealth by his/her divorced spouse." [Citation omitted.]); id. ("The award of alimony is for the suitable support and maintenance of the complainant. It is not a profit-sharing plan."); *Harris* v. *Harris*, Vermont Supreme Court, Docket No. 2000-303 (Vt. June 6, 2001) ("The record evidence did not establish that [the] *wife's* reasonable needs were not currently being met in relation to the standard of living established during the marriage. The only significant change adduced by [the] wife, and cited by the court, related to [the] *husband's* circumstances; his income upon retirement was indisputably higher than the amount predicted in the divorce decree. Standing alone, however, we fail to see how this change was germane to the legal question of whether [the] wife's current maintenance payments were sufficient to meet her reasonable needs." [Emphasis in original.]). But see *Lott* v. *Lott*, 17 Md. App. 440, 447, 302 A.2d 666 (1973) ("a substantial increase in the husband's income alone can, under appropriate circumstances, be legally sufficient to justify an increase in the amount of alimony even though the wife's needs continue as they existed at the time of the initial award"); *Martindell* v. *Martindell*, 21 N.J. 341, 355, 122 A.2d 352 (1956) (when supporting spouse's "resources have substantially increased, then his former wife may fairly seek an increase upon an affirmative showing that a higher award of alimony would be fit, reasonable and just . . . in view of all of the circumstances then prevailing" [citation omitted; internal quotation marks omitted]); *Balmer* v. *Balmer*, 12 Misc. 2d 226, 228, 179 N.Y.S.2d 234 ("Alimony must be fixed . . . after considering the financial situation of each party. This means the wife's receipts must go down when his do; it would seem that they should increase proportionately when he is well able to pay more."), modified on other grounds, 7 App. Div. 2d 741, 180 N.Y.S.2d 1017 (1958), aff'd, 7 N.Y.2d 833, 164 N.E.2d 725, 196 N.Y.S.2d 707 (1959); *Commonwealth ex rel. Levy* v. *Levy*, 240 Pa. Super. 168, 174, 361 A.2d 781 (1976) (increase in supporting spouse's income was sufficient justification to increase combined alimony and child support award).

[11] In support of her claim to the contrary, the plaintiff notes that, in *Zahringer* v. *Zahringer*, 69 Conn. App. 251, 793 A.2d 1214 (2002), rev'd on other grounds, 262 Conn. 360, 815 A.2d 75 (2003), the Appellate Court rejected a claim that the trial court improperly had "ordered an increase of alimony that raised the [supported spouse] well above her standard of living at the time of the dissolution." Id., 260; see also *Panganiban* v. *Panganiban*, 54 Conn. App. 634, 642, 736 A.2d 190 (supporting spouse challenged alimony award that was "far above anything to which the [supported spouse] had been accustomed, based on her station in life and standard of living"), cert. denied, 251 Conn. 920, 742 A.2d 359 (1999). In *Panganiban*, the defendant, Alan Panganiban (supporting spouse), won $16 million in a lottery after he and the plaintiff, Roxanna Panganiban (supported spouse), were separated but before they were divorced. See *Panganiban* v. *Panganiban*, supra, 636–37. Before his good fortune, the supporting spouse had been unemployed and receiving public assistance. Id., 636. The trial court awarded the supported spouse time limited alimony in the amount of $6000 per month. Id., 642. On appeal, the Appellate Court rejected the supporting spouse's claim that the alimony award was excessive in light of the supported spouse's station in life and standard of living; id., 642–43; stating that "[i]t is hornbook law that what a spouse can afford to pay for support and alimony is a material consideration in the court's determination as to what is a proper order." (Internal quotation marks omitted.) Id. We conclude that *Panganiban* is distinguishable from the present case because (1) the supporting spouse in *Panganiban* won the lottery *during the marriage*, (2) the case involved an initial alimony award, not a modification, and (3) the case involved considerations of the public purse, as the supporting spouse also had been receiving public assistance during the marriage.

In *Zahringer*, the Appellate Court relied on *Panganiban* to reject the

challenge of the defendant, George J. Zahringer (supporting spouse), to the trial court's upward modification of the alimony award to a level that raised the plaintiff, Celia Zahringer (supported spouse), above her standard of living during the marriage on the basis of the supporting spouse's increased income after the divorce. *Zahringer* v. *Zahringer*, supra, 69 Conn. App. 260–61. The Appellate noted, however, that the trial court had found that "the parties' children had grown, and that their needs and educational requirements changed." Id., 261. In addition, the supported spouse's monthly expenses had increased. See id.; see also id. ("the [trial] court was persuaded by the [supported spouse] that she required the increase to provide for herself and the children"). Thus, it is arguable that the Appellate Court determined in *Zahringer* that the increased alimony award did not improve the supported spouse's standard of living but merely maintained it. To the extent that *Zahringer* suggests that the supported spouse was entitled to share in any improvements in the supporting spouse's standard of living after the divorce, it is hereby overruled.

The plaintiff also claims that *Hardisty* v. *Hardisty*, 183 Conn. 253, 439 A.2d 307 (1981), and *Schwarz* v. *Schwarz*, 124 Conn. App. 472, 5 A.3d 548, cert. denied, 299 Conn. 909, 10 A.3d 525 (2010), support the proposition that an increase in the supporting spouse's income, standing alone, is sufficient justification to increase an alimony award. We disagree. In both of those cases, the trial court expressly had found that a modification was justified in part because of the supported spouse's increased needs. *Hardisty* v. *Hardisty*, supra, 261; *Schwarz* v. *Schwarz*, supra, 485–86.

[12] The plaintiff contends that, even if the original alimony award could not be modified pursuant to statute on the sole ground that the defendant's income had substantially increased, the parties' stipulation expressly provides that "alimony payments provided pursuant to . . . [a]rticle IV [of the stipulation] shall be modifiable upon the showing of a substantial change in the circumstances of the parties . . . ." Although the trial court referred to this provision of the stipulation in passing during the hearing on the motion for modification, the court did not base its ruling on the provision. Rather, the court expressly based its ruling on the statutory criteria set forth in § 46b-82. Because the trial court did not consider whether the stipulation would provide for an alimony modification that would not otherwise be warranted by statute, the plaintiff's claim is unreviewable.

[13] We do not suggest that this is the exclusive circumstance under which a substantial increase in the supporting spouse's income, standing alone, would justify the granting of a motion to modify an alimony award. Because it is impossible to anticipate all of the factual circumstances that might justify a modification based solely on an increase in the supporting spouse's income, the determination must be made on a case-by-case basis.

[14] The plaintiff contends that, "[i]f the [trial] court [is] limited in its consideration to only those § 46b-82 factors that [have] changed . . . then a spouse who had been married to a payor for only six months and who had been the sole cause of the marital breakdown would, upon a substantial increase in the payor's income, be entitled to exactly the same [upward] modification of alimony as the spouse who had been married to the payor for fifty years and whose marriage had broken down because of the payor's adultery and physical abuse." Presumably, however, a spouse in this situation would not receive an initial alimony award that was intended to maintain the standard of living that he or she had enjoyed during the marriage. Rather, on the basis of the short length of the marriage and his or her fault for the divorce, the spouse would likely receive, at most, a time limited rehabilitative alimony award. Thus, if the spouse filed a motion for modification, the trial court would be required to determine only whether the initial award still fulfilled its rehabilitative purpose under the changed circumstances. The court would not be required to reconsider whether a rehabilitative award was justified by the length of the marriage or the cause of the divorce. Moreover, even if the spouse received an initial award that was intended to maintain his or her standard of living, a motion for modification would not be a proper vehicle for revisiting that determination.